UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CENTRIC TECHNOLOGIES, LLC, | Case No.: 5:12-cv-06427-PSG |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| GEORGIA TECH RESEARCH CORPORATION, | **(Re: Docket No. 42)** |
| Defendant. | |

Defendant Georgia Tech Research Corporation ("GTRC") moves to dismiss the complaint pursuant to Fed. R. Civ. P 12(b)(7) and 19. Plaintiff Centric Technologies, LLC ("Centric") opposes. The parties appeared for a hearing. Having reviewed the papers and considered the arguments of counsel, GTRC's motion to dismiss is DENIED.

## I. BACKGROUND

GTRC is a non-profit, Georgia corporation with its principal place of business in Atlanta.[1] GTRC serves the Georgia Institute of Technology ("Georgia Tech") by prosecuting, licensing, developing, and commercializing its intellectual property ("IP").[2] Georgia Tech is a leading public research university located in Atlanta. Centric is a California corporation with its principal place of

---

[1] *See* Docket No. 1 at ¶ 6.

[2] *See id.*

1

Case No.: 5:12-cv-06427-PSG
ORDER

business in Cupertino.[3] The parties dispute who has what rights to develop disputed Georgia Tech 60 GHz wireless technology.

On May 8, 2012, GTRC entered into an exclusive worldwide license agreement with Centric with the understanding that "Centric would have the right to commercialize, market and sell the 60 GHz Technology."[4] Centric claims it then executed a letter of intent ("LOI") for the purchase of 119,000 chips incorporating the wireless technology for $15-20 million.[5] The buyer's interest was conditioned on Centric's ability to generate chips quickly – that's where the trouble began. In particular, the buyer's LOI required Centric to meet several "time sensitive" milestones.[6] To meet those milestones, Centric asked GTRC for a demonstration prototype or, in the alternative, sought readily available chips incorporating the technology from a French foundry ("the foundry").[7] Centric alleges that, in violation of its obligations, GTRC stood in the way of both of its efforts. In particular, Centric alleges that the foundry denied its request and claimed "it could not fulfill the order using the 60 GHz Technology because of restrictions by GTRC."[8]

Centric then filed this suit. Centric raises four claims in the operative complaint: (Count 1) breach of contract, (Count 2) tortuous interference with prospective economic advantage, (Count 3) negligent interference with contractual or business relations, and (Count 6) declaratory relief.[9]

---

[3] *See id.* at ¶ 5.

[4] *See id.* at ¶ 10.

[5] *See id.* at ¶ 20. At this point in the litigation Centric has not disclosed the buyer's identity.

[6] *Id.* at ¶ 21.

[7] *Id.* at ¶ 19.

[8] *Id.* at ¶ 22.

[9] *See* Docket No. 32 at 9-11. Count 6 appears to be numbered to reflect the claims Centric no longer asserts.

2
Case No.: 5:12-cv-06427-PSG
ORDER

## II. LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(7), an action may be dismissed for failure to join a required party under Fed. R. Civ. P. 19. "To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside the pleadings."[10] Determining whether to dismiss an action under Rule 19 is a three-step process.[11] "First, the court must determine whether a nonparty should be joined under Rule 19(a)."[12] If a nonparty meets the requirements of Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the absentee be joined."[13] "'Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee' or whether the action must be dismissed."[14] The case cannot proceed if the party is one who "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."[15]

## III. DISCUSSION

At the heart of GTRC's motion is its argument that this case should not proceed without Georgia Tech and the Attorney General of the State of Georgia ("the State of Georgia Entities"). As sketched above, a "motion to dismiss based on Rule 19 requires the court to engage in 'three

---

[10] *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *see also Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001) ("In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence.") (citations omitted).

[11] *See EEOC v. Peabody W. Coal Co.,* 610 F.3d 1070, 1078 (9th Cir. 2010) ("*Peabody III* ") (citing *EEOC v. Peabody W. Coal. Co.,* 410 F.3d 774, 779 (9th Cir. 2005) ("*Peabody II* ")).

[12] *Id.* (quoting *Peabody II,* 410 F.3d at 779). Note that previously courts used the term "necessary" to describe such persons, *Peabody II*, 410 F.3d at 779, but Rule 19(a) now refers to whether a party is "required."

[13] *Id.*

[14] *Peabody III,* 610 F.3d at 1078 (quoting *Peabody II,* 400 F.3d at 779)

[15] *Id.* (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1855)).

3
Case No.: 5:12-cv-06427-PSG
ORDER

successive inquiries': (1) whether the absent party is 'necessary'; (2) whether it is 'feasible' to join the absent, necessary party; and (3) whether the absent party is 'indispensable.'"[16] The Court discusses each inquiry in turn.

### A. Necessary Party

In relevant part, Rule 19(a)(1) provides that:

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.[17]

A nonparty who satisfies Rule 19(a) is deemed "necessary" in the sense that such person's joinder is "desirable in the interests of just adjudication."[18] The court "must determine whether the absent party has a legally protected interest in the suit," and if so, whether "that interest will be impaired or impeded by the suit."[19] There "is no precise formula for determining whether a particular

---

[16] *A10 Networks, Inc. v. Brocade Commc'ns Sys., Inc.*, Case No. 5:11-cv-05493-LHK, 2012 WL 1932878, at *8 (N.D. Cal. May 29, 2012) (citing *Peabody II,* 610 F.3d at 1078).

[17] Fed. R. Civ. P. 19(a).

[18] *EEOC v. Peabody W. Coal Co.,* 400 F.3d 774, 779 (9th Cir. 2005) (*"Peabody I"*) (internal quotation marks and citations omitted).

[19] *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir. 1990).

4

Case No.: 5:12-cv-06427-PSG
ORDER

nonparty should be joined under Rule 19(a)."[20] "The determination is heavily influenced by the facts and circumstances of each case."[21]

GTRC is adamant that Centric is improperly using this litigation to indirectly exert pressure on both State of Georgia Entities.[22] GTRC takes particular issue with the declaratory relief count brought by Centric in its Complaint.[23] GTRC suggests that the declaratory relief count attempts to obtain from the State of Georgia Entities that which it could not obtain directly: existing physical items incorporating the 60 MHz technology. GTRC insists it does not possess or have an obligation or ability to deliver those physical items and that only the State of Georgia Entities have the necessary possession, access, and control to those materials. GTRC therefore concludes that the equitable relief that Centric seeks cannot be properly adjudicated without the participation of the State of Georgia Entities.

Centric sees it differently. It says its complaint does not seek the existing materials, but merely asks the court to address GTRC's tortuous interference with its business opportunities. The complaint seeks damages for the breach of its licensing agreement and the interference with its development of the technology. The complaint is not directed toward replevin of existing materials; Centric merely wants damages for GTRC's refusal to permit commercialization of the technology in violation of the license agreement. Further, Centric wants GTRC to authorize the foundry to produce chips incorporating the technology.

The court notes that Centric's position is somewhat ambiguous as to whether it

---

[20] *Peabody II,* 610 F.3d at 1081 (internal quotations and citations omitted).

[21] *Id.*

[22] Centric does not dispute whether those entities possess state immunity in federal court under the Eleventh Amendment.

[23] *See* Docket No. 32 at ¶¶ 41-43.

5
Case No.: 5:12-cv-06427-PSG
ORDER

prospectively seeks existing physical materials in this litigation.[24] The court further notes the parties' dispute whether or not GTRC controls the foundry's production of chips incorporating the licensed technology. GTRC argues that Centric "misinterprets GEDC's bylaws" and points out that "GTRC is not a member, manager, or director of GEDC."[25] While it concedes that it provides some "administration services" to GEDC,[26] GTRC nevertheless contends GEDC is a part of Georgia Tech and thus Georgia Tech is necessary to the resolution of Centric's claims because it cannot commit the foundry to a production run.[27]

The court first addresses whether Centric is now seeking, or may prospectively seek, the existing chips incorporating the technology. In short, whatever the ambiguities in its complaint, the court will hold Centric to its representations. Its papers, specifically its opposition to the motion to dismiss, at one point states unequivocally that it "does not seek ownership of the 2010 Property" through the present suit.[28] The court accepts Centric's representation and will not permit it to prospectively seek existing physical materials incorporating the technology in this litigation.

With that backdrop, the court turns to whether GTRC controls GEDC such that it controls whether the foundry will produce the licensed materials. Taking the allegations in Plaintiffs' complaint as true for the purposes of this motion, the court must accept their point that GEDC is controlled by GTRC. Therefore, GTRC appears to have had the power, in its own right, to control

---

[24] *Compare* Docket No. 44 at 13 ("Here, the *core* allegations of the FAC do not concern ownership rights to the 2010 Property to which the Georgia Entities claim an interest.") (emphasis added), *with* Docket No. 44 at 10 ("Centrc does not seek ownership of the 2010 Property through the present suit (GTRC having denied their ownership); rather, it seeks damages for GTRC's refusal to permit commercialization: the frustration of the Centric License Agreement and the interference with third party agreements, economic advantage and business relations.").

[25] Docket No. 47 at 7.

[26] *Id.*

[27] GTRC also urges that the Attorney General is necessary as well, because the Attorney General has an "evidentiary interest" in the existing chips and any related intellectual property that could be used to create new chips to support an "ongoing criminal investigation." *See* Docket No. 42 at 3.

[28] *See supra* note 24.

6
Case No.: 5:12-cv-06427-PSG
ORDER

whether or not the foundry was willing to produce chips for Centric.

Because this dispute does not concern existing materials in the possession of the State of Georgia Entities, the likelihood of inconsistent, duplicative litigation is low. Moreover, the State of Georgia Entities' interests are not seriously implicated by this litigation. On balance, the court finds that the State of Georgia Entities are not necessary parties to this litigation under Rule 19.

**B.      Joinder of the State of Georgia Entities is Not Feasible**

Even though the court finds that the State of Georgia Entities are not necessary, for purposes of completeness the court next considers the other two Rule 19 factors.

If the absent nonparty is a "necessary" party under Rule 19(a), the second step requires the court to determine whether it is feasible to order that the absent nonparty be joined.[29] Here, the State of Georgia Entities possess immunity under the Eleventh Amendment and have not consented to suit in this jurisdiction. Absent a waiver, which has not been tendered, the court therefore cannot order the State of Georgia Entities joined.[30]

**C.      Indispensability of the Parties**

Finally, if joinder is not feasible, the Court must proceed to the third step, determining under Rule 19(b) "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[31] In conducting its Rule 19(b) analysis, the Court must consider the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>     (A) protective provisions in the judgment;

---

[29] *See Peabody II,* 610 F.3d at 1078.

[30] *See Peabody III,* 610 F.3d at 1078; *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1220 (Fed. Cir. 2010) ("Absent a waiver, [the University of Texas] cannot be joined.").

[31] Fed. R. Civ. P. 19(b).

7
Case No.: 5:12-cv-06427-PSG
ORDER

(B) shaping the relief;

(C) or other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.[32]

### 1. First Factor

As discussed above, the absence of the State of Georgia Entities is not likely to prejudice their interests, because this litigation is not focused on existing physical materials incorporating the licensed technology in their possession.

### 2. Second Factor

A decision by this court precluding Centric from seeking existing physical materials is one way the court can shape relief to reduce potential prejudice faced by the State of Georgia Entities. By taking such action the court has limited potential prejudice to the State of Georgia Entities.

### 3. Third Factor

A judgment in the absence of the State of Georgia Entities would be adequate, because only a contract dispute is at issue in the current litigation. Thus, money damages are appropriate. Centric's complaint does not adequately seek equitable relief in its prayer therefore any remedy from this court is likely to be financial in nature.

### 4. Fourth Factor

Whether Centric would have an adequate remedy if this litigation were dismissed turns on whether Centric could sue the State of Georgia Entities in Georgia state court. GTRC's papers suggest that all of the parties would be subject to a Georgia state court's jurisdiction, but the Georgia state constitution appears to bar litigation of this nature against the State of Georgia Entities in Georgia state court even though the Eleventh Amendment does not apply to state court

---

[32] *Id.*

proceedings.[33] Thus, the court finds that Centric would not have an "adequate" alternative remedy if this litigation were dismissed.

In sum, the court finds that it can equitably adjudicate this dispute. GTRC's motion is DENIED.

**IT IS SO ORDERED.**

Dated: September 24, 2013

                                                              _____
                                                             PAUL S. GREWAL
                                                             United States Magistrate Judge

---

[33] *See* Ga. Code Ann. § 20-3-36 (West 1976) (the doctrine of sovereign immunity applies to the board of regents); *But see* Ga. Const. art. I, § 2, ¶ IX, (c) ("The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies.")

9
Case No.: 5:12-cv-06427-PSG
ORDER